## Wynn v. Commonwealth.

(Decided June 18, 1920.)

### Appeal from Henderson Circuit Court.

1. Criminal Law—Separation of Jury.—During the trial of one indicted for murder the sheriff took the jury to a skating rink. Eleven of the jury were seated together, the twelfth man was permitted to assist the musicians and was seated about thirty feet from the sheriff and the remainder of the jury but in plain view. Held, that there was not such a separation of the jury under the circumstances as would warrant a new trial.

2. Criminal Law—Separation of Jury—New Trial.—The mere opportunity to converse with a juror, nothing else appearing, is not sufficient to secure a new trial, especially where, it is conclusively shown that no one talked to any member of the panel about the case.

3. Criminal Law—Waiver of Objection to Question of Witness.—In the cross-examination of a witness an objection was interposed to a question, but the court did not pass upon the objection at the time, the notation being, "Passed for the present." It not appearing that the matter was again called to the attention of the court appellant will be held to have waived any objection he might otherwise have had to the ruling of the court.

4. Criminal Law—Appeal and Error.—If upon a consideration of the whole case the court is satisfied that the substantial rights of the accused have not been prejudiced judgment will be affirmed.

CASS L. WALKER, W. P. McCLAIN and F. J. PENTECOST for appellant.

N. POWELL TAYLOR, MARVIN B. EBLEN, CHARLES I. DAWSON, Attorney General, and T. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellant was indicted for the crime of murder of W. H. Fox, committed June 13, 1918. Upon trial he was found guilty of voluntary manslaughter, was sentenced to a term of twenty-one years in the penitentiary and to reverse that judgment has prosecuted this appeal.

The evidence in the case being sufficient to sustain the verdict it will be unnecessary to enter into a discussion of the events leading up to the crime for which appellant was indicted. We will address ourselves to the points raised by counsel in the brief, but in the inverse order of their presentment.

1. Alleged misconduct of the jury on the night of the first day of the trial. With the usual admonition the sheriff was placed in charge of the jury. He took the twelve men to witness a special attraction at the skating rink in Henderson. A space 60x180 feet had been set aside for the skaters; around the four sides, behind a railing, several rows of benches had been placed for spectators. The musicians were stationed near the center of the rink. The sheriff and members of the jury sat on benches. Harry High, one of the jurors, was a pianist and cornetist; upon request made to him and to the sheriff he was permitted to assist the musicians; he was seated within thirty feet of the place where the sheriff was sitting.

In support of the motion for a new trial, and as grounds for reversal, it is said that at times during the performance people congregated around High and the piano, and in such numbers as to obstruct the view of the sheriff, thus affording designing persons opportunity to communicate with High, but the affidavits filed in support of the motion do not show that any communications affecting or pertaining to the trial were made. On the contrary the affidavits of the sheriff, High, the remaining eleven jurors and other persons state that during the whole evening High was in plain view of the sheriff, and that the opportunity to communicate with either High or the other jurors was at no time given, and High himself says that he did not speak to any one about the case, nor was it discussed in his presence at any time that evening. It is well recognized that a jury in a criminal case in charge of the sheriff may properly be taken to places of amusement, to restaurants and the like, and that the temporary withdrawal of a juror from the immediate presence of his fellow jurors or the sheriff

will not constitute such separation as will affect the verdict where, as in the present instance, the juror of whom complaint is made was, during the whole evening, within plain view of the sheriff and the remaining jurors, and at a distance of not exceeding thirty or forty feet.

We have had occasion to write upon this subject in numerous cases. The opinion nearest in point to the facts of this appeal is probably that of Johnson v. Commonwealth, 179 Ky. 40, 200 S. W. 35. In this case it was charged that the sheriff permitted one of the jurors to converse with a person other than a member of the jury, and two or more of the jury were permitted to enter a drug store and thereby separate themselves from the remaining members. It was not charged that anything improper was said or done by any of the jurors or persons, but there, as here, it was contended that the acts were in violation of the Criminal Code and the decisions of this court holding that although the case was not discussed between the jurors and other persons, and no juror did anything culpable, yet their conduct was improper because an opportunity was presented for the jury to discuss the case with strangers or others if they had been so minded. Affidavits of the sheriff and others were filed showing that the jurors whose conduct was complained of were in the presence of and within view of the sheriff and the others jurors, that the conversation referred to related to a matter having no connection with the case referred to, and the sheriff said the two jurors who went to the drug store were in plain view all the time. The court held it satisfactorily appeared the jurors were kept together; nothing happened that could have prejudiced the appellant and no opportunity was given for any wrong.

In French v. Commonwealth, 100 Ky. 63, 18 Rep. 574, 47 S. W. 269, relied upon by appellant, the facts were similar to Campbell v. Commonwealth, 162 Ky. 106, 172 S. W. 110, distinguished in the Johnson case, *supra*. In the French case a juror was permitted to go to his place of business some blocks away, and therfore was separated from the remaining jurors and the sheriff, facts entirely dissimilar to those found in the present record.

In the recent case of Shackelford, etc. v. Commonwealth, 185 Ky. 51, 214 S. W. 788, we had occasion to

deal with this same question, and in the opinion will be found many cases from this court on the subject. We there held that the facts were not sufficient to justify or warrant a reversal. The mere opportunity to converse with a juror, nothing else appearing, is not sufficient to secure a new trial. It is better, however, to avoid the appearance of wrong-doing. This can best be done in those cases where the jury must be kept together by not allowing any separation of the jurors for any purpose during the trial when possible to do so.

2.    The admission and rejection of evidence.

(a)    In the cross-examination by appellant's counsel of the witness Reynolds the following question was asked: "I will ask you this: If after Devers was arrested Mr. W. J. Nisbet came up there and made an affidavit, Mr. Forsythe I believe it was made an affidavit, and claimed that whiskey, and you delivered that whiskey to him?" An objection was interposed to this question but there was no ruling of the court thereon, the notation being "Passed for the present." No further reference is made to the question or to the objection. There is nothing to show how the court ruled thereon. While the question was not answered it does not appear it was ever brought again to the attention of the court; thus appellant waived any objection he might otherwise have had in this regard.

(b)    Objection is next made to certain other questions propounded the witness Reynolds. As to the first of these an objection by the Commonwealth was sustained, but appellant made no avowal. As to the second there was an avowal following the ruling of the court sustaining an objection to the question. The question, however, pertained to a collateral matter and one not directly involved upon the trial, nor did the court's ruling constitute prejudicial or reversible error. The question had reference to the purchase of whiskey from appellant.

(c)    Two other questions addressed to the witness Reynolds were objected to; these pertained to the trial of appellant on a charge of bootlegging. There had been previous testimony introduced on this question, which was one of the events that took place prior to the commission of the crime. It is urged the questions were unfair and tended to prejudice the minds of the jury.

While their pertinency is not apparent, we do not think the questions or answers thereto were prejudicial.

(d) After appellant had concluded his case the Commonwealth introduced testimony to prove that appellant's reputation for truth and veracity as well as his moral character was bad. One of these witnesses, T. J. Montgomery, on cross-examination was asked this question: "Do you know the *general reputation* of Mr. Fox, the man who was killed?" An objection to this question was sustained. This is urged as error. The question was not in proper form, as will readily be seen. A man may acquire a reputation for many things. Generally speaking where the accused testifies in his own behalf his reputation for morality, truth and veracity may be brought in question, but here the inquiry was too broad; it should have been more limited or restricted. In McLain v. Commonwealth, 171 Ky. 373, 188 S. W. 377, it was held competent to prove by those intimate with decedent that he was a man of overbearing disposition, quarrelsome, inclined to bring on difficulties and trouble; the plea was self-defense, and it was doubtful, under the evidence, as to who was the aggressor. If this was the idea sought to be covered by the question, it was embraced in the next succeeding question propounded the same witness which was answered without objection. Similar objection was made to a question of like nature addressed to Dr. Williams. The witness was asked if he thought he knew the general reputation, etc., of deceased. From the succeeding questions and answers given without objection, it is manifest accused received the full benefit of any knowledge or information witness had as to Fox's reputation. However, no avowal was made as to any of the questions to which an objection was sustained.

(e) The conduct of the county attorney in asking three certain incompetent questions is complained of. In each instance the court promptly sustained the objection. The questions were not answered; they were improper and should have no place in the record, but in acting upon the objections the court did everything requested by appellant's counsel.

(f) It is said the court erred in overruling the objection to the following question asked a witness for the prosecution:

"Take Mr. Wynn you testify that his character was bad. To refresh your recollection I will ask you if you have ever heard it said that Mr. Wynn was charged with robbery and sent to the penitentiary?"

This question was improper and due regard to the rules of evidence and practice should have so told the representative of the Commonwealth. The answer was, "I have heard it, yes, sir." There had been some previous evidence in this connection, but not of such a nature as to make the question competent or proper.

By provisions of section 340 of the Criminal Code a judgment of conviction shall be reversed for any error of law appearing in the record, when upon consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced thereby. The record before us discloses certain errors, such for instance as the question next above referred to, but upon an examination of the entire record we are satisfied the court committed no error prejudicial to the substantial rights of accused.

Having reached this conclusion it follows that the judgment appealed from must be and is affirmed.