## Williams v. Commonwealth.

(Decided February 9, 1923.)

### Appeal from Perry Circuit Court.

1. Homicide—Instructions—Evidence.—On the Commonwealth's proof in this case held that it was proper to instruct the jury to find the accused guilty of murder if it should believe, beyond a reasonable doubt, that the deceased had in his possession a warrant for the arrest of accused and arrested or undertook to arrest him, and while so doing the accused, for the purpose of breaking arrest or preventing it, wilfully, knowingly, feloniously and with malice aforethought shot and killed deceased.

2. Criminal Law—Killing Officer Before Opportunity to Read Warrant—Defense.—Section 39 of the Criminal Code does not require an arresting officer, having in his possession a warrant for the arrest of one accused of a crime, to speak or make known his purpose to the person about to be arrested or to read the warrant to him until the officer has seen the person about to be arrested or has had an opportunity to speak to him, and if, before the officer has such an opportunity, he is killed by the person about to be arrested, the latter cannot avail himself of the defense that the attempted arrest was illegal and that he could lawfully resist it.

3. Criminal Law—Instructions.—Instructions complained of held to comply with the rule that on criminal trials every material issue that has a substantial basis in the evidence shall be submitted to the jury.

4. Criminal Law—Proof of Existence of Warrant—Evidence.—It is competent, on the trial of one charged with murder, to prove the

existence and contents of a warrant in the possession of the officer killed, where the evidence shows that the warrant has been lost and cannot be found.

5. Criminal Law—Reversal of Judgment of Conviction—Evidence.—A judgment of conviction will not be reversed for technical errors committed in the admission of incompetent testimony if, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have not been prejudiced by the admission of the testimony. .

WOOTTON & SMITH and D. G. BOLEYN for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

Appellant, Herman Williams, was tried in the Perry circuit court on the charge of murdering Richard Crawford, and was convicted of manslaughter and sentenced to confinement in the state penitentiary for twenty-one years. His motion for a new trial having been overruled, he has appealed to this court for a reversal of the judgment.

Crawford was a deputy sheriff of Perry county. He had a warrant for the arrest of appellant, and, learning that he had returned to his home after several days' absence therefrom, proceeded with Ira Holliday to appellant's house for the purpose of executing the warrant. As the two approached the house a half-sister of appellant emerged from the residence of a relative nearby, followed the officers for a short distance, and then taking a short route reached the yard before they did and, according to the witness Holliday, called to appellant that Crawford was coming. The testimony for the Commonwealth shows that immediately after this warning was given some one was heard running across the porch, and as Crawford approached a pistol was fired through the vines growing on the porch, and Crawford immediately fell, mortally wounded. Other shots were fired successively, and Holliday ran. Appellant then left the house and went into the mountains, but several weeks later surrendered to the officers, being persuaded to do so by his stepfather, who received a part of the reward offered for his capture.

Appellant testified that the shooting was done in self-defense; that his attention was first called to Crawford by his mother, who was sitting on the porch with him,

and that almost immediately a gun was thrown in his face, and, after making two or three jumps, he drew his revolver from his pocket and fired three times in quick succession. It is admitted that Crawford did not fire at appellant. Some testimony was introduced by appellant tending to show that Crawford had threatened his life, but all of that testimony came from appellant's relatives and otherwise there is nothing in the record to indicate that Crawford had any object in going to the house other than to execute the warrants and thus perform his duty as deputy sheriff. It is the theory of the defense that deceased approached the house holding his gun in a position to fire it, and that appellant, believing that his life was in danger, fired in self-defense. The evidence as a whole, however, does not sustain that theory. It is the contention of the Commonwealth, and that theory is borne out by many circumstances in the record, that Crawford was not sure that appellant was at the house and in fact never saw him. And it was proved that as late as the morning of the day on which the killing occurred appellant had threatened to kill Crawford if he attempted to execute the warrants.

The first ground urged for a reversal of the judgment is that the instructions are erroneous. Instruction No. 1 is said to be objectionable in that it includes the words "arrested" and "for the purpose of breaking said arrest." This instruction authorized a conviction for murder if the jury believed from the evidence, beyond a reasonable doubt, that Crawford had in his possession a warrant of arrest for appellant and arrested or undertook to arrest him, and while so doing appellant, for the purpose of breaking arrest or preventing it, wilfully, knowingly, feloniously, and with malice aforethought, shot and killed Crawford, knowing at the time that he was a deputy sheriff and the reason for his arresting or attempting to arrest appellant. It is contended that there is no proof that Crawford had "arrested" appellant and none that the latter shot the deceased "for the purpose of breaking arrest," and accordingly there was no sustainable ground for the instruction.

There are two complete answers to appellant's criticism of this instruction. The first is, that he was not convicted under the instruction, and the assumption that there was evidence to the effect that Crawford had arrested appellant and he was attempting to break the arrest, if unwarranted, was harmless, since appellant was

not convicted of murder and the verdict of the jury was in no sense based on that instruction. The other is, the instruction is correct because there was evidence showing that Crawford had warrants for the arrest of appellant, that he was proceeding to appellant's house for the purpose of executing those warrants and would have executed them had he not been killed, and that appellant knew the purpose of Crawford and that he was a deputy sheriff. All of the elements included in the instruction have some foundation in the proof, and in view of that fact the instruction was proper.

Complaint is also made of that part of instruction No. 5 in which appellant was denied the claim of self-defense if the harm or danger, if any there was, to him or any member of his family, was made necessary or excusable by his unlawful or wrongful act in resisting arrest by force and with the knowledge that Crawford and Holliday were peace officers and were about to arrest or attempt to arrest him. This instruction is assailed on the ground that it, like instruction No. 1, assumes that there was evidence to show that decedent was about to arrest or attempt to arrest appellant. It is pointed out in this connection that under section 39 of the Criminal Code a person making an arrest is required to inform the person about to be arrested of the intention to arrest, and of the offense charged against him, and if acting under a warrant shall give information thereof and, if required, shall show the warrant; and it is argued that an arrest not made in substantial compliance with these requirements is illegal and may be lawfully resisted. It is undoubtedly true that deceased did not speak to appellant or inform him of his purpose to make the arrest, but it does not follow that appellant had a right to shoot deceased or, knowing his purpose, to defy and resist him. The evidence for the prosecution is that deceased had gone to appellant's house with a warrant for his arrest, and that he would have made the arrest had appellant not fired upon him and killed him. It was not the duty of Crawford, under that view of the proof, to speak or make known his purpose to appellant or to read the warrant to him, because he did not know where appellant was and had not seen him or had the opportunity of speaking to him.

But appellant contends that instruction No. 5 is erroneous because it was predicated entirely on the Common-

wealth's theory and included no statement of the law applicable to appellant's evidence of justifiable homicide. We are aware of the rule in this state uniformly applied to criminal trials that every material issue of the case that has a substantial basis in the evidence should be submitted to the jury. However, we do not construe instruction No. 5 as violative of that doctrine or as failing to submit appellant's theory of the case to the jury, which is that Crawford did not intend to arrest appellant but to kill him, according to threats proven by some of the witnesses. The instruction directed an acquittal of appellant on the ground of self-defense if he believed or had reasonable grounds to believe that he or any of his family was in danger of death or the infliction of bodily harm at the hands of Crawford or Ira Holliday, or either of them, and it was necessary or was believed by him to be necessary, in the exercise of a reasonable judgment, to shoot at and kill Crawford in order to avert the danger, real or to him apparent. That part of the instruction covered appellant's theory of the case. It was the only defense that he sought to establish and the only one available to him. But the instruction also announced another principle of law, in support of which there was evidence for the Commonwealth; it is, that one who is about to be arrested cannot, by resisting arrest, create a danger to himself and then avail himself of that danger as a defense to murder. The instruction embodies that theory as well as the theory that appellant sought to establish. It contains a fair and concise exposition of the law and gave to appellant every defense to which he was entitled.

The final contention is that the judgment should be reversed on the ground of the admission of incompetent testimony. The first complaint is that the trial court permitted the existence and contents of the warrants in possession of Crawford to be shown by oral testimony. The warrants had been lost and the testimony was clearly competent under Craft v. Commonwealth, 196 Ky. 277. The testimony to which the other objection goes related to the reputation of Crawford with respect to making arrests—whether he was a dangerous, violent or bad man in the making of an arrest, or whether he was orderly. This testimony was introduced in rebuttal after appellant had introduced evidence of threats made by decedent. Apparently it was admitted on the idea that Crawford's reputation in this particular was in issue. If we

assume that the admission of this testimony was a technical error, we cannot say that its effect was prejudicial. Under section 340 of the Criminal Code, we are not authorized to reverse a judgment of conviction for any error of law appearing in the record unless, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced. Wynn v. Commonwealth, 188 Ky. 557; Hill v. Commonwealth, 191 Ky. 477. We are convinced from a careful consideration of the record that the admission of the testimony complained of did not affect appellant's substantial rights. The killing of Crawford, if the Commonwealth's evidence is to be believed, was an outrageous murder. The opposing evidence, when considered in the light of the undisputed facts, establishes no justification —and hardly a single extenuating circumstance. The trial was fair and the verdict is exceedingly light under the facts proved.

The judgment is affirmed.