## · Gardner v. Commonwealth.

(Decided September 29, 1931.)

DOWLING & BAIRD for appellant.

J. W. CAMMACK, Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Fred Gardner was convicted of the crime of manslaughter and condemned to serve seven years ·in the penitentiary. He has prosecuted an appeal, complaining

that a dying declaration by his victim was inadmissible in evidence, that an instruction upon the law of self-defense was erroneously modified, and that the court committed an error in denying a motion to discharge the jury because of an impropriety on the part of a prosecuting attorney in his argument to the jury.

The facts are few and may be shortly stated. Gardner and Melvin Smith were present at a church where an all-day service was in progress. Gardner accosted Smith and requested him to leave the presence of others assembled on the grounds. They proceeded together some distance from the church and disappeared from sight. Immediately thereafter three pistol shots were heard, and it was found that three wounds had been inflicted upon the body of Smith. It appeared that the two men previously had been engaged in a fight, and Smith had been the victor. The testimony tended to show that Gardner cherished resentment, and had made many threats against Smith. Gardner testified that he called Smith out of the crowd to make friends with him, and not to provoke a difficulty. His advances, Gardner said, were not received in the spirit intended, but provoked Smith, who then assaulted Gardner with a knife, rendering it necessary for Gardner to shoot him in defense of his own life. Gardner exhibited a torn shirt sleeve and some cuts on his arm and in his clothing. After Smith was taken home, he stated that he could not recover and detailed the facts of the encounter. He said that Gardner asked him who told him that Gardner had mistreated Smith's brother, when he was informed that it was none of his business. As they were walking along, Gardner reached for his pistol and Smith seized him by the arm. Gardner got loose, tearing his shirt sleeve, and immediately shot Smith three times. Smith said he had no knife or other weapon and did not try to injure Gardner. The various witnesses who heard the declaration of Smith give slightly different versions of his words, but the substance and effect of the facts related were as stated. Smith died of his wounds, and Gardner was indicted for murder.

The dying declaration of Smith was admissible. It was made at a time when he was laboring under a sense of impending death and came within the reason, spirit, and terms of the decisions. Petty v. Com., 178 Ky. 483, 199 S. W. 20. He died within four days after he made the statements, and he clearly manifested his belief that

his wounds would prove fatal. Whitehead v. Com., 200 Ky. 441, 255 S. W. 93; Cavanaugh v. Com., 172 Ky. 799, 190 S. W. 123. The fact that he afterwards went to a hospital and submitted to surgical treatment, in an effort to get well, did not affect the competency of a dying statement previously made under the conditions sanctioned by the law to determine its admissibility. Shell v. Com., 200 Ky. 722, 255 S. W. 516.

The court modified the instruction on self-defense by providing in a further instruction that self-defense was not available to Gardner if the jury found from the evidence beyond a reasonable doubt that Gardner began the difficulty by making a demonstration to shoot Smith, or in case the combat was voluntarily engaged in by both the defendant and the deceased with the intention on the part of each to kill the other. It is argued that such instruction had no basis in the evidence and was therefore erroneous and prejudicial. The contention is that Gardner's theory of the case was one of unqualified self-defense, whilst the theory of the state was that the defendant committed willful murder. It is overlooked that a middle ground may be deduced from the evidence. The jury was not bound to accept either alternative suggested, but was free to find from the evidence the hypothesis covered by the instructions. Taking part of the evidence for the commonwealth and a portion of that for the defendant, the jury may have believed that the two men voluntarily engaged in a mortal combat; or they may have concluded that after Gardner made demonstrations to shoot Smith, the latter undertook to cut him with a knife, as Gardner said. The facts deducible from the testimony as a whole justified the court in giving the instruction. It was for the jury to determine the facts from all the testimony. Smith v. Com., 215 Ky. 815, 287 S. W. 8; Hamilton v. Com., 218 Ky. 521, 291 S. W. 765; Turk v. Com., 239 Ky. 55, 38 S. W. (2d) 937.

In an argument addressed to the jury the county attorney said: "The defendant has read in evidence the affidavit of certain witnesses as to what they would state if present in court; the attorney for the defendant wrote this affidavit." Thereupon the defendant interposed an objection and moved for a discharge of the jury. The presiding judge at once sustained the objection, and admonished the jury respecting its duty to give the same weight to the affidavit that would be given to the testimony of witnesses if present before the jury. Appellant insisted

upon a discharge of the jury, and now insists that the court erred in going on with the trial. The law gives to the defendant in such situation the benefit of the facts stated in the affidavit, exactly as it does of facts derived from testimony delivered by witnesses before the jury, and prosecuting officers should not endeavor to belittle or impugn the value of the substitute provided by law for the testimony of absent witnesses. If the prosecutor abuses his privilege in that respect, the court should sustain objections to it and admonish the jury appropriately to accomplish the purpose of the law. Shepherd v. Com., 119 Ky. 931, 85 S. W. 191, 27 Ky. Law Rep. 376. Indeed, failure to do so promptly and effectively will be deemed reversible error. Fleming v. Com., 224 Ky. 160, 5 S. W. (2d) 899; Carroll v. Com., 92 S. W. 308, 29 Ky. Law Rep. 33; Martin v. Com., 121 Ky. 332, 89 S. W. 226, 28 Ky. Law Rep. 295.

But where the court acts promptly and emphasizes the duty of the jury to give full consideration to evidence of that character, it cannot be said that a sound discretion has been abused. Here the reference to the affidavit was restricted to a statement of its authorship, a fact no doubt already known to the jury. There was no attempt by the attorney to go further, or to weaken the effect of the positive and precise admonition of the court. The action of the court was sufficient to protect the rights of the defendant. Druin v. Com., (Ky.) 124 S. W. 856; Thomas v. Com., 196 Ky. 539, 245 S. W. 164.

The appellant was well defended, the jury was lenient, and the result reached was not prejudicial to his substantial rights.

The judgment is affirmed.

JUDGE RICHARDSON not sitting.