## Jackson v. Commonwealth.

(Decided Dec. 21, 1934.)

**76**

HUBERT MEREDITH for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Appellant was convicted of the offense of manslaughter and sentenced to serve 21 years in the penitentiary. He appeals.

One night in February, 1933, a dance was being held at the home of Loren King. Among those in attendance were Howard Davis, known in this record as "Cotton" Davis, Wilma Stewart, Mozart Jackson, and his father, the appellant, Ben Jackson. Davis and Miss Stewart were dancing. In accordance with the custom prevailing in the community and at this dance, Mozart Jackson undertook to "break in" on Davis and Miss Stewart. It seems that neither Davis nor Miss Stewart desired to be thus interrupted in their dance, and Miss Stewart refused to dance with Mozart Jackson. Words then passed between Mozart Jackson and Davis. Up to this point there is no dispute in the evidence. The witnesses for the commonwealth must be divided into three classes. Those of the first class testify that, while Davis and Mozart Jackson were having their wordy battle, the appellant, Ben Jackson, who was then standing near the wall, came over to the quarreling couple and without more ado pulled his pistol and shot Davis three times, and that Davis had said nothing and done nothing to the appellant to cause the appellant thus to shoot him. The witnesses of the second class testify that, while the wordy battle was going on, Davis knocked Mozart down, and that thereupon Jackson came over to the scene of the quarrel and requested Davis to "lay off" of Mozart, and that thereupon Davis got into a quarrel with Ben Jackson and advanced upon him with an upraised hand, and that Jackson backed off (one wit-

ness saying as much as eight or ten feet), at the same time telling Davis to stop and not come on any further, and that, after he had backed to eight or ten feet, and while Davis was still pursuing him, Jackson fired his pistol at Davis three times, so wounding him that he later died. The witnesses of the third class testify that Davis knocked Mozart down and that Ben Jackson then came over and that a quarrel then broke out between appellant and Davis, and that Davis lifted his right hand and Jackson stepped back a step or two and fired. No commonwealth's witness testifies to seeing any weapon in Davis' hands. The witnesses for the defense are in accord with the testimony given by the commonwealth's witnesses of the second class, except that the appellant claims that Davis was advancing upon him with a knife. Appellant also introduced evidence as to a threat made by Davis in the earlier part of the evening when he saw appellant and his son Mozart arrive at the dance.

As grounds for reversal, it is urged that the court erred in refusing the appellant a continuance, that the closing argument of the commonwealth's attorney was prejudicial, and that there were errors in the instructions given, and that the trial court failed to instruct on the whole law of the case. As we are of opinion that there is merit in the fourth contention, the first two need not here be considered.

In instructing the jury, the court gave the usual self-defense instruction, and then qualified it by telling the jury that, although they might believe that in shooting Davis appellant believed that he was acting in self-defense or defense of Mozart, yet, if the jury believed to the exclusion of a reasonable doubt that appellant, when neither he nor Mozart was in any real or apparent danger of death or other great bodily harm at the hands of Davis, willfully and feloniously brought on the difficulty with Howard Davis or entered into a mutual combat with Howard Davis, then it could not acquit the appellant on the ground of self-defense. It is argued that there was no evidence to support this instruction. In this counsel is in error, for there was evidence to sustain the proposition that, whilst Davis and Mozart Jackson were engaged in only a wordy battle, Ben Jackson intervened and brought on the difficulty between him and Davis that later resulted in Davis' death. Under such state of case, it was proper to qualify the

self-defense instruction as the court did. Gross v. Commonwealth, 255 Ky. 88, 72 S. W. (2d) 1017. But appellant is correct in his argument that, the trial court having thus qualified the self-defense instruction, it was its further duty under the evidence which had been adduced to give an instruction embodying the theory that, even though appellant did bring on the quarrel, he could yet invoke the right of self-defense if he in good faith withdrew or attempted to withdraw from the combat, and that, too, in a way that his adversary could see that he intended to withdraw. If there was evidence to support that theory, it was the duty of the court to give such an instruction. See Banks v. Commonwealth, 196 Ky. 639, 245 S. W. 296. There was evidence in this case to show that, after appellant had gotten into the quarrel going on between his son and Davis, and had diverted the quarrel to himself, Davis made a threatening gesture towards appellant, and that thereupon appellant backed off eight or ten feet, and that appellant, as he backed off from Davis, told Davis, who continued to advance upon him, to stop once or twice. This evidence called for the instruction which appellant says should have been given in view of the instruction which was given qualifying his right of self-defense.

For the failure of the court to so instruct, the judgment must be reversed, and it is so ordered.